George B. Caudle v. Commissioner.
Caudle v. Commissioner
Docket No. 3457.
United States Tax Court
1945 Tax Ct. Memo LEXIS 263; 4 T.C.M. (CCH) 324; T.C.M. (RIA) 45100; March 20, 1945
Francis A. O'Brien, Esq., for the petitioner. Francis S. Gettle, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in *264 gift tax for the years 1936, 1937 and 1938, in the amounts of $46.29, $46.06, and $46.30. The only question is whether gifts made by petitioner were gifts of future interests for which no exclusions are allowable in computing gift taxes. Petitioner filed gift tax returns for the taxable years with the collector for the 28th district of New York. Some facts have been stipulated. Findings of Fact The petitioner resides in Rochester, New York. On November 27, 1935, he executed an irrevocable trust indenture, under which he named the Genesee Valley Trust Company as trustee. The corpus of the trust consisted of the following insurance policies on petitioner's life: Face
Amount
Policy
of Policy
1. Massachusetts Mutual Life Ins. Co.
$ 50,000
No. 1,177,246
2. Massachusetts Mutual Life Ins. Co.
100,000
No. 1,174,467
3. Home Life Ins. Co. No. 432,003
50,000
4. Home Life Ins. Co. No. 432,004
10,000
The first three policies listed above, having a total face value of $200,000, were single-premium policies, and the premiums had been fully paid by petitioner prior to the creation of the trust. The fourth policy, Home Life Policy No. 432,004, having a face *265 value of $10,000, required the payment of annual premiums. Net annual premiums on this policy were paid by petitioner from his personal funds, as follows: Dividend
Total
Applied on
Net
Year
Premium
Premium
Premium
1936
$479.20
$38.30
$440.90
1937
479.20
40.50
438.70
1938
479.20
38.30
440.90
Each of the four policies conveyed to the trust, as hereinbefore set forth, provided that, at the option of the insured, dividends would be paid in cash or could be applied to purchase participating paid-up additions. During each of the taxable years, the trustee exercised the option to apply the dividends on the three paid-up policies to purchase additional paid-up insurance, as follows: Massachusetts Mutual Life Policy No. 1177246 Total Paid-Up
Additional
Year
Dividends
Insurance
1936
$279.27
$2,585.00
1937
284.48
3,069.00
1938
290.29
3,554.00
Massachusetts Mutual Life Policy No. 1174467 Total Paid-Up
Additional
Year
Dividends
Insurance
1936
$558.53
$5,170.00
1937
568.97
6,137.00
1938
580.57
7,107.00
Home Life Policy No. 432003 Total Paid-Up
Additional
Year
Dividends
Insurance
1936
$406.00
$ 704.00
1937
413.35
1,408.00
1938
351.90
1,996.00
*266 The trust indenture, executed by petitioner on November 27, 1935, contained the following provisions: "First: The Settlor has delivered to the Trustee the insurance policies on his life, described in Schedule 'A' hereto annexed, and agrees to make the proceeds thereof payable to the Trustee (without right of revocation), upon their maturity as death claims. * * * * * *
"Third: The Trustee is hereby vested with all right, title, and interest in and to the policies, and is authorized to exercise and enjoy all the options, rights, and privileges, and beneficial interest thereunder as fully and as effectually as the settlor might have done. * * * Fourth: The Settlor agrees and directs that upon his death, the proceeds of said policies shall be paid to the Trustee. * * * * * * "Fifth: The Trustee shall hold and manage the fund, when so collected, together with such other property as may be acquired, during the existence of this trust, all of which said property, will hereinafter be referred to as the 'trust estate', * * * * * *
"Seventh: The Trustee shall collect and receive said monies and property which it may receive hereunder upon the following uses and trusts: *267 "It shall invest and re-invest the same, collect the income thereof, and pay such income, in convenient periodical installments, during the lifetime of the Settlor's wife, Helen C. Caudle, to his said wife. "Upon the death of the Settlor's said wife the trust shall be continued, and the Trustee shall pay such income, in convenient periodical installments, unto the Settlor's son, Daniel B. Caudle, until he shall arrive at the age of forty (40), at which time the principal shall be paid to the Settlor's said son. In the event that the said Daniel B. Caudle dies before attaining the age of forty (40), the Trustee shall pay the principal of this trust to his issue, per stirpes. "The Trustee shall have full power and authority in its sole discretion, to pay over to and for the use of the Settlor's said wife and/or son any amounts of principal from the trust estate as said Trustee may deem necessary for their proper care and support. * * *
"Ninth: The Trustee is directed to charge all premiums on investments against principal, and to credit all discounts on investments to principal. All stock dividends and all extraordinary cash dividends shall be allocated to income or to the *268 corpus of the trust and added to the capital thereof, as in the judgment of the Trustee it shall seem proper to do, discretion being hereby given to the Trustee to make such allocation. The Trustee, in its discretion, may also apportion between principal and income expenditures made by it, notwithstanding any legal rule to the contrary in the absence of such discretion." The trust indenture also authorized the trustee to purchase securities or other property from the representatives of the settlor's estate or from the trustees under his will, and to make loans to such representatives or trustees. Provision was also made that upon the settlor's death, the trustee "shall receive as compensation hereunder fees equal to those allowed Testamentary Trustees under the Laws of the State of New York, * * *." Petitioner's wife, Helen C. Caudle, and his son, Daniel B. Caudle, were living during each of the taxable years. Petitioner filed a gift tax return for each of the taxable years, under which he reported as a gift the net annual premium paid on policy No. 432004, and claimed an exclusion of $5,000 for each year. In the notice of deficiency, respondent determined that petitioner made *269 gifts of future interests in the taxable years and disallowed the claimed exclusions. He also disallowed a $5,000 exclusion claimed by petitioner on his gift tax return for 1935. Opinion The only question for determination is whether the gifts made by petitioner of payments of premiums on the $10,000 annualpayment life insurance policy in each of the taxable years were gifts of present interests as petitioner contends or gifts of future interests as respondent has determined in his deficiency notice. The issue affects the year 1935 since respondent in the deficiency notice has held that the gifts of the insurance policies in that year were gifts of future interests in property and that he erred in his allowance to petitioner of the $5,000 exclusion claimed on the 1935 gift tax return, which error should now be corrected in determining the proper amount of net gifts to be carried forward to ascertain petitioner's gift tax liability for the taxable years. Although the year 1935 is not before us, respondent's action in disallowing the claimed exclusion for that year is permissible. See . The applicable statute is section *270 504(b) of the Revenue Act of 1932 [1] and the applicable Treasury Regulations are Regulations 79, article 11. *271 The term "future interests in property" refers to any interest, whether vested or contingent, limited to commence in use, possession, or enjoyment at some future date. ); ); ) and cases cited therein. Unless the donee is entitled unconditionally to the present use, possession, or enjoyment of the property transferred, the gift is one of a future interest for which no exclusion is allowable under the statute. As stated in , "We may determine whether the gift is of a present or future interest by ascertaining whether or not the beneficiary is entitled to the immediate and unrestricted use of the trust estate, or its income." In this proceeding, it is clear that the beneficiaries received no unconditional, present right to either the principal or income of the trust, i.e., to the policy proceeds or to policy comdividends, if any. The trust principal consisted *272 of insurance policies which matured on petitioner's death. By the terms of the trust, the settlor directed "that upon his death, the proceeds of said policies shall be paid to the trustee" and "the Trustee shall hold and manage the fund, when so collected," and "shall invest and re-invest the same, collect the income thereof, and pay such income, in convenient periodical installments, during the lifetime of the Settlor's wife, Helen C. Caudle, to his said wife." Upon the death of the settlor's wife, the trustee was to pay the income to the settlor's son until the son became 40 years of age, at which time, the principal was to be paid to the son. With respect to the trust principal which would consist of the proceeds of the policies, it is obvious that the beneficiaries have no present enjoyment, since their use and enjoyment are "postponed to the happening of a future uncertain event," ; namely, the death of the settlor. They will never have a right of enjoyment unless they survive the settlor, or unless the trustee converts the policies to cash by surrender and then invests the proceeds in income-producing property. Petitioner argues, however, *273 that the trust indenture gives his wife the present enjoyment of the dividends which may be declared on the policies. In 1935, when the trust was created, and in each of the taxable years, the dividends earned were substantial. It appears that they were not received by the trustee, but were retained and applied to additional insurance. If the trust provided that the policy dividends were currently payable to a beneficiary, then petitioner's argument would be tenable. See . However, the trust provisions here, unlike those in the Tidemann case, supra, do not affirmatively provide that policy dividends are payable to a trust beneficiary. The only reasonable interpretation of the trust indenture is that trust income means income from the trust fund, and that income is not payable to either beneficiary until after the proceeds of the policies are collected, which, of course, is a future matter, depending upon either the grantor's death or future action by the trustee. Article Seventh of the trust is the Article which must receive the chief consideration in deciding the question presented. It clearly provides that the trust fund, as a fund, *274 is to be derived from the insurance proceeds. The trustee is authorized to invest and reinvest such proceeds and to collect the income therefrom. It is that income, namely, income from the property in which the insurance proceeds are invested, that the beneficiary is to receive. Petitioner's argument suggests that "income", as that term is used in Article Seventh means some other income. That interpretation is not tenable. There is no ambiguity. As the trust stood in the taxable years the direction to distribute income to the grantor's wife or son clearly refers to income to be produced from the investment of the insurance proceeds, and, obviously, such investment had not been made. The distributable income could not be produced until the insurance policies were paid, either upon surrender for a cash value or upon their maturity at the death of the insured. Petitioner's contention is based upon an unsound construction of the trust indenture. That instrument is controlling of the question presented. Obviously, petitioner has directed his argument to "income" of a special class, to wit, dividends paid on policies in the trust. Limiting our consideration, then, to such possible income, *275 we cannot conclude that the income beneficiary of the trust had a present, unconditional right to receive, currently, dividends earned by the policies. The income beneficiary did not have the right to require payment in cash of earned dividends into the trust and the right to have such cash dividends paid to her, or to him, thereafter. The trustee was given the sole right to determine all matters under the policies, including the use and application of policy dividends, as well as the surrender of policies for cash value. See Article Third of the indenture. Pursuant to this power, the trustee in 1935 and in each of the taxable years, directed that the policy dividends should be applied to the purchase of additional insurance. This, it was permitted to do. Under the circumstances, neither beneficiary could unqualifiedly demand that the policy dividends be paid in cash, nor could they demand that the policies be surrendered during the petitioner's lifetime. The original gift in trust of the insurance policies was a gift of future interests since neither beneficiary had unconditional, present rights under the trust. The payments of annual premiums on the $10,000 policy during each *276 of the taxable years were gifts of future interests. ); ; ; ). Respondent's determination is sustained. Decision will be entered for the respondent. Footnotes
1. 1. SEC. 504. NET GIFTS. (b) Gifts Less Than $5,000 - In the case of gifts (otherr than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year. 2. ART. 11. Future interests in property. - No part of the value of a gift of a future interest may be excluded in determining the total amount of gifts made during the calendar year. "Future interests" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession, or enjoyment at some future date or time. The term has no reference to such contractual rights as exist in a bond, note (though bearing no interest until maturity), or in a policy of life insurance, the obligations of which are to be discharged by payment in the future. But a future interest or interests in such contractual obligations may be created by the limitations contained in a trust or other instrument of transfer employed in effecting a gift. For the valuation of future interests, see subdivision (7) of article 19. SEC. 505 (AS AMENDED BY SECTION 517 OF THE REVENUE ACT OF 1934). DEDUCTIONS. In computing net gifts for any calendar year there shall be allowed as deductions: (a) Residents. - In the case of a citizen or resident - (1) Specific Exemption. - An exemption of $50,000, less the aggregate of the amounts claimed and allowed as specific exemption for preceding calendar years. (2) Charitable, Etc., Gifts. - The amount of all gifts made during such year to or for the use of - (A) the United States, any State, Territory, or any political subdivision thereof, or the District of Columbia, for exclusively public purposes; (B) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes including the encouragement of art and the prevention of cruelty to children or animals; no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; (C) a fraternal society, order, or association, operating under the lodge system, but only if such gifts are to be used exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals; (D) posts or organizations of war veterans, or auxiliary units or societies of any such posts or organizations, if such posts, organizations, units, or societies are organized in the United States or any of its possessions, and if no part of their net earnings inures to the benefit of any private shareholder or individual; (E) the special fund for vocational rehabilitation authorized by section 12 of the World War Veterans' Act, 1924. (b) Nonresidents. - In the case of a nonresident not a citizen of the United States, the amount of all gifts made during such year to or for the use of - (1) the United States, any State, Territory, or any political subdivision thereof, or the District of Columbia, for exclusively public purposes; (2) a domestic corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals; no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; (3) a trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; but only if such gifts are to be used within the United States exclusively for such purposes; (4) a fraternal society, order, or association, operating under the lodge system, but only if such gifts are to be used within the United States exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals; (5) posts or organizations of war veterans, or auxillary units or societies of any such posts or organizations, if such posts, organizations, units or societies are organized in the United States or any of its possessions, and if no part of their net earnings inures to the benefit of any private shareholder or individual; (6) the special fund for vocational rehabilitation authorized by section 12 of the World War Veterans' Act, 1924. (c) The deductions provided in subsection (a) (2) or (b) shall be allowed only to the extent that the gifts therein specified are included in the amount of gifts against which such deductions are applied. SEC. 301. REVENUE ACT OF 1935. * * * (b) Section 505 (a) (1) of the Revenue Act of 1932 (relating to the specific exemption for gifttax purposes) is amended by striking out "$50,000" and inserting in lieu thereof "$40,000". (c) The amendments made by subsections (a) and (b) of this section shall be applied in computing the tax for the calendar year 1936 and each calendar year thereafter (but not the tax for the calendar year 1935 or a previous calendar year), and such amendments shall be applied in all computations in respect of the calendar year 1935 and previous calendar years for the purpose of computing the tax for the calendar year 1936 or any calendar year thereafter.↩